

SEALED



**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON GRAND JURY 2020**
**APRIL 27, 2021 SESSION**

**UNITED STATES OF AMERICA**

**v.**                                    CRIMINAL NO. 3:21-CR-00069
                                        18 U.S.C. § 1343
                                        18 U.S.C. § 1957
                                        18 U.S.C. § 2315

**AUGUSTINE AMECHI**

# I N D I C T M E N T

The Grand Jury charges:

## Introduction

At all times relevant to the Indictment:

### Terms

1.      "Online schemes" targeted persons looking for romantic partners, friendship, and other close personal and business relationships on dating websites and other social media platforms.  The perpetrators of the schemes created profiles using fictitious and fake names, locations, images, and personas, allowing the perpetrators of the schemes to cultivate relationships with prospective victims.  The victims provided money and gifts to the perpetrators of the schemes and were typically asked to continue and conduct transactions on behalf of the perpetrators of the scheme.

2.      "Cryptocurrency" was a form of non-fiat based digital currency, in which transactions were verified and records maintained by a decentralized system using computer data and codes, rather than by a centralized authority.  Bitcoin was a type of cryptocurrency.

3.     City National Bank was a financial institution of the Federal Deposit Insurance Act, within the meaning of 18 U.S.C. § 20.

4.     At all relevant times, City National Bank was a financial institution which engaged in, and the activities of which affected, interstate commerce as defined in 31 U.S.C § 5312(a)(2).

5.     "Zelle" was a digital payment network and part of a private financial services company owned by Bank of America, BB&T now Truist, Capital One, Chase, PNC Bank, U.S. Bank and Wells Fargo. Zelle allowed an individual to electronically transfer money from his or her bank account to another registered user's bank account, held within the United States, by using a mobile device or the website of a participating banking institution.

<u>The Scheme to Defraud</u>

6.     From in or around early 2017 until at least through May 27, 2020, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant AUGUSTINE AMECHI, together with others both known and unknown to the Grand Jury, knowingly participated in a scheme to commit wire fraud offenses, in violation of 18 U.S.C. § 1343.

7.     The purpose of the scheme to defraud was for defendant AUGUSTINE AMECHI and his associates to enrich themselves by falsely cultivating relationships online with the victims and thereby causing the victims to send money to persons working with defendant AUGUSTINE AMECHI and his associates, and to accounts controlled by defendant AUGUSTINE AMECHI and his associates.

<u>Manner and Means</u>

8.      It was part of the scheme to defraud that defendant AUGUSTINE AMECHI and others both known and unknown to the Grand Jury, would and did:

   a.  Target and contact victims via email, text messaging, or online dating websites and social media websites that fraudulently induced victims into believing the victim was in a romantic relationship, friendship, or business relationship with a person using a false and fraudulent identity created by defendant and his associates of the scheme;

   b.  Refuse to use FaceTime or any other video-chat technology with the victims in order to conceal their true identities;

   c.  Induce the victims to send money for a variety of false and fraudulent reasons to persons using fraudulent identities, when, in actuality, the accounts were controlled by defendant and his associates;

   d.  Direct victims to send payments via wire transfer services, including but not limited to bank wire, Western Union, and MoneyGram, to defendant and his associates.  At times, victims were directed to send payments to shell companies and accounts under defendant and his associates' control;

   e.  Direct victims to purchase cashier's checks and money orders which were then sent to identified parties and addresses using the United States Postal Service and other common couriers; and

   f.  Share the proceeds with his associates and with others through wire transfers, Zelle, and by cashing money orders and cashier's checks.

9.      Specifically, defendant AUGUSTINE AMECHI and others both known and unknown to the Grand Jury, carried out the scheme to defraud in the following manner:

**Richard Clem and Victim D.A.**

10.     In or around 2017, defendant AUGUSTINE AMECH, together with persons known or unknown to the Grand Jury, through an individual purporting to be Richard Clem (hereinafter reference to "Richard" shall mean the false persona created to further the fraud scheme) contacted Victim D.A. through Facebook.  Victim D.A. lived in Nevada.

3

11.     As part of the scheme to defraud, Richard and Victim D.A. communicated frequently via text messages, email and phone calls.   As the result of Richard's frequent communications, Victim D.A. falsely began to view Richard as a romantic interest and began what Victim D.A. was led to believe was a three-year online romance.  After virtually dating Richard for a few months, Victim D.A. was fraudulently induced by Richard to repeatedly send money for his benefit based on a variety of false and fabricated reasons Richard provided to Victim D.A.

12.     In furtherance of the scheme to defraud, Richard falsely and fraudulently told Victim D.A. that he was a Lieutenant in the United States Army sent to Scotland on a peacekeeping mission.

13.     In furtherance of the scheme to defraud, Richard falsely and fraudulently told Victim D.A. that he had a son who was injured in a car accident and that Richard needed money to pay his son's hospitals bills.

14.     In furtherance of the scheme, Richard also falsely and fraudulently told Victim D.A. that his platoon had discovered a gold mine and bought it from its previous owner.  Richard then fraudulently induced Victim D.A. to send him money to both pay the mine workers and to pay to ship the gold back to the United States.  Richard falsely and fraudulently promised Victim D.A. that he would share the gold with her when he returned to the United States.

15.     As part of the scheme to defraud, Richard also falsely told Victim D.A. that he had been arrested in Scotland when he tried to leave the country because his visa had expired.  Claiming falsely that he was leaving Scotland to travel to the United States to marry Victim D.A., Richard then fraudulently induced Victim D.A. to send him more money so that he could renew his visa and return to the United States to marry her.

16.     In furtherance of the scheme to defraud, Richard also falsely and fraudulently told Victim D.A. that he had been involved in a car accident and needed surgery to save his leg. Richard then fraudulently induced Victim D.A. to send him a large amount of money to pay his falsely claimed medical bills.

17.     In furtherance of the scheme to defraud, Richard induced Victim D.A. to send funds to him multiple times and directed that the funds be sent to at least 15 different individuals. Richard never directed Victim D.A. to send the funds directly to him.

18.     In furtherance of the scheme to defraud, on or about March 2, 2020, Richard induced Victim D.A. to wire $3,000 from her bank account held in Las Vegas, Nevada to defendant AUGUSTINE AMECHI's bank account held in Huntington, Cabell County, West Virginia.

**Jerry Williams and Victim B.F.**

19.     In or around January 2020, defendant AUGUSTINE AMECHI, together with persons both known and unknown to the Grand Jury, through an individual purporting to be Jerry Williams (hereinafter reference to "Jerry" shall mean the false persona created to further the fraud scheme) frequently contacted Victim B.F. through Facebook and Google Hangouts. Victim B.F. resided in Indiana.

20.     As part of the scheme to defraud, based on the frequent communications from Jerry, Victim B.F. began to view Jerry as a romantic interest and began what she was led to believe was a virtual romance.

21.     In furtherance of the scheme to defraud, Jerry falsely told Victim B.F. that his name was William James, but that he had to change it to James Williams and later to Jerry Williams for security reasons.

22.     In furtherance of the scheme to defraud, Jerry also falsely told Victim B.F. that he was a General in the United States Army stationed in Afghanistan.  Jerry told Victim B.F. that he wanted to leave the Army, come back to the United States, and marry her.

23.     In furtherance of the scheme to defraud, Jerry then fraudulently induced B.F. to send money for his benefit so that he (Jerry) could travel back to the United States.

24.     As part of the scheme, Jerry fraudulently induced Victim B.F. to send funds to him multiple times, through different individuals who he called his "security people," who were supposed to forward the funds to Jerry.

25.     In furtherance of the scheme to defraud, on or about April 28, 2020, Victim B.F. wired $8,000 to defendant AUGUSTINE AMECHI's bank account held at PNC Bank.  Jerry instructed Victim B.F. to write on the wire transfer form that the purpose of the wire was "paying off debt," which was false as Victim B.F. wired the funds at Jerry's direction and for his benefit and not to repay a debt.

26.     In furtherance of the scheme to defraud, on or about May 4, 2020, Jerry also fraudulently induced Victim B.F. to wire another $20,000 to defendant AUGUSTINE AMECHI's bank account held at PNC Bank.  Jerry again instructed Victim B.F. to write on the wire transfer form that the purpose of the wire was "paying off debt," which was false, as Victim B.F. wired the funds at Jerry's direction and for his benefit and not to repay a debt.

**Teddy Drey and Victim J.F.**

27.     In or around the fall of 2019, defendant AUGUSTINE AMECHI, through an individual purporting to be Teddy Drey (hereinafter any reference to "Teddy" shall mean the false persona created to further the fraud) contacted Victim J.F. online.  Victim J.F. lived in Michigan.

28.     As part of the scheme to defraud, Teddy communicated with Victim J.F. through Instagram and the encrypted messaging application, "Whats App".

29.     In furtherance of the scheme to defraud, Teddy falsely told Victim J.F. through a text message that if Victim J.F. invested money in Bitcoin, his investment would double in 2-4 weeks.

30.     In furtherance of the scheme to defraud, Teddy fraudulently induced Victim J.F. to wire $1,000 to defendant AUGUSTINE AMECHI's City National Bank account located in Huntington, Cabell County, West Virginia.

31.     As part of the scheme, Teddy falsely assured Victim J.F. via text that this investment was not a scam.

32.     Victim J.F. never received any returns or profits from these Bitcoin "investments."

## Counts One and Two
### (Wire Fraud)

33.     Paragraphs 1 through 32 are incorporated herein.

34.     On or about the following dates at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant AUGUSTINE AMECHI , and others both known and unknown to the Grand Jury, having devised and intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme, did knowingly transmit and cause to be transmitted by means of wire and radio communications in interstate commerce the writings, signs, signals, pictures, and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | INTERSATE TRANSMISSION | FROM | TO |
|-------|------|------------------------|------|-----|
| 1 | 11/29/2019 | Victim J.F. wired $1,000 | Michigan | Huntington, WV |
| 2 | 3/2/2020 | Victim D.A. wired $3,000 | Nevada | Huntington, WV |

All in violation of Title 18, United States Code, Section 1343.

## Count Three
### (Unlawful Monetary Transactions)

35.     Paragraphs 1 –32 are incorporated by reference herein.

36.     At all relevant times, City National Bank had a branch located in Huntington, Cabell County, West Virginia.

37.     On or about July 13, 2020, at or near Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant AUGUSTINE AMECHI knowingly engaged in a monetary transaction by, through, or to a financial institution, specifically, transferring via wire $10,015 from his account held by City National Bank to another financial institution, in criminally derived property that was of a value greater than $10,000 and which was derived from specified unlawful activity, that is, wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1343 and 1344.

38.     While engaging in the monetary transaction, defendant AUGUSTINE AMECHI knew that the property involved in the monetary transaction was criminally derived.

All in violation of Title 18, United States Code, Section 1957.

## Count Four
### (Receipt of Stolen Money)

39.     Paragraphs 1 –32 are incorporated by reference herein.

40.     From at least 2018 through at least May 27, 2020, in Huntington, Cabell County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant AUGUSTINE AMECHI received, possessed, concealed, stored, bartered, sold and disposed of goods, wares, merchandise, securities, and money of the value of $5,000 and more, which had crossed a state boundary after being stolen, unlawfully converted, and taken, to wit: defendant AUGUSTINE AMECHI received proceeds of fraud schemes that he knew had been stolen and which were transferred from bank accounts and money transfer locations located outside of the State of West Virginia to bank accounts in Huntington, Cabell County, West Virginia and elsewhere.

All in violation of Title 18, United States Code, Section 2315.

## **NOTICE OF FORFEITURE**

1.     The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of giving notice of forfeiture pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).

2.     Notice is hereby given of 18 U.S.C. § 981 and 28 U.S.C. § 2461(c).  Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including, but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C).

The following property is subject to forfeiture in accordance with Section 981 and/or 2461(c):

a.     all property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

b.     all property involved in such violations or traceable to property involved in such violations; and

c.     if, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant's to the extent of the value of the property described in (a) and (b).

The following property is subject to forfeiture on one or more grounds stated above: a forfeiture money judgment in the amount of at least $147,762.19, such amount constituting the proceeds of the violations set forth in this Indictment.

LISA G. JOHNSTON
Acting United States Attorney

By:

KATHLEEN ROBESON
Assistant United States Attorney


R. GREGORY MCVEY
Assistant United States Attorney